IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LUCAS HORTON, | § | |
|   Plaintiff, | § | |
| | § | |
| v. | § | No. 3:25-CV-1206-X-BW |
| | § | |
| MOLINA HEALTHCARE OF | § | |
| TEXAS, INC., et al., | § | |
|   Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is Defendant Molina Healthcare of Texas, Inc.'s ("Molina")

Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), filed on

June 13, 2025.  (Dkt. No. 5.)  Also before the Court is Plaintiff Lucas Horton's

Motion for Hearing.  (Dkt. No. 11.)  Pursuant to 28 U.S.C. § 636(b) and Special

Order No. 3-251, this case is referred to the undersigned United States magistrate

judge for pretrial management, which includes making findings and a recommended

disposition when appropriate.  (Dkt. No. 1.)

Based on the relevant filings and applicable law, the undersigned recommends

that Molina's motion to dismiss (Dkt. No. 5) be **GRANTED**, and Horton's motion

for hearing (Dkt. No. 11) be **DENIED**.

## I.    BACKGROUND

### A.    Procedural Background

On May 13, 2025, Horton filed his pro se complaint against Molina and "John Doe Company" alleging purported violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*, and derivative Texas state law claims based on the alleged TCPA violations.  (Dkt. No. 3 (Complaint ("Compl.")).)  Horton asserts five causes of action: (1) violation of TCPA, 47 U.S.C. § 227(b)(1)(A); (2) violation of TCPA, 47 U.S.C. § 227(c)(3)(F); (3) failure to maintain written telemarketing policy in violation of 47 C.F.R. § 1200(d)(1); (4) violation of Section 305.053 of the Texas Business and Commerce Code; and (5) failure to provide identifying information in violation of 47 C.F.R. § 64.1200(d)(4).  (*See* Compl. at ECF p. 7–9.)

Molina filed its motion to dismiss on June 13, 2025, generally arguing that Horton's allegations do not plausibly allege the violation of any provision in the TCPA, including failing to adequately allege the use of an ATDS, failing to allege that two or more solicitations occurred, and failing to allege that Molina, or someone on its behalf, sent the violative messages.  (*See generally* Dkt. No. 5 ("Motion" ("Mot.")).)  Accordingly, argues Molina, Horton has failed to state a claim and all causes of action asserted against Molina should be dismissed.  (*Id.*)  Horton filed a response on July 3, 2025 (Dkt. No. 9 ("Resp.")), and Molina filed a reply on July 17,

2025 (Dkt. No. 10 ("Reply").)  Accordingly, Molina's motion to dismiss (Dkt. No. 5) is ripe for consideration.

Then, on December 10, 2025, Horton filed a motion for hearing wherein he requests a hearing to compel Molina to issue him a premium refund for the insurance policy he purchased in the healthcare marketplace, allegedly as a result of "illegal robocalls." (Dkt. No. 11.)  Molina filed a response on December 31, 2025 (Dkt. No. 12), to which Horton filed a reply (Dkt. No. 13) and appendix (Dkt. No. 14) on the same date.  Then, on January 21, 2026, well after the 14-day deadline to file a reply brief, *see* N.D. Tex. L. Civ. R. 7.1(f), Horton filed an additional appendix in support of his request for a refund.  (*See* Dkt. No. 15.)  In any event, Horton's motion for hearing (Dkt. No. 11) is likewise ripe for consideration.

## B.    Factual Background

The lawsuit arises out of various unsolicited text messages Horton claims that Molina, or its agent, John Doe Company, sent to him.  (*See generally* Compl.)  Horton alleges that Molina and John Doe Company acted improperly by texting his number, which is listed on the National Do Not Call List,[1] with an automatic telephone dialing machine ("ATDS")[2] and without his consent and without proper

---

[1] As explained further below, the TCPA contains a provision that "prohibits telemarketers from calling residential phones numbers listed on the National Do-Not-Call Registry to solicit business."  *Pinn v. Quintessa*, LLC, No. 3:24-CV-3090-B, 2025 WL 2201050, at *2 (N.D. Tex. Aug. 1, 2025) (citing 47 C.F.R. § 64.1200(c)(2)).

[2] An ATDS is a piece of equipment with the capacity "(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  47 U.S.C. § 227(a).

sender-identifying information.  (*See id.*)  He also alleges that Molina was required to provide the company's internal Do Not Call policy upon demand but failed to do so.  (Compl. at ECF p. 7–8.)

Horton alleges the following facts in his complaint.  Horton is the owner of a residential cellphone number ending in 3341, which he occasionally uses for business purposes, but it is not registered to his business.  (Compl. ¶ 10.)  According to Horton, this telephone number has been registered on the National DNC list since 2011.  (Compl. ¶ 4.)  On November 21, 2024, Horton alleges he received a text message from telephone number 888-884-3286 stating that "open enrollment has begun and to call 888-408-9110."  (*Id.* ¶ 13.)  He alleges that he received two similar text messages from telephone number 888-919-1795 on Jan 7, 2025, and on Jan 15, 2025, both claiming that Horton's 2025 healthcare plan may require attention and to call 888-201-0773.  (*Id.* ¶ 12.)

Horton next alleges that on April 1, 2025, he "called 888-201-0773 and bought a Molina policy with a payment confirmation # of 52762888 for $39.70."  He alleges the policy was sold by a man named Julien Rivera, whose email address was julien@coverageassociate.com, which Horton represents is not a valid website domain.  (*Id.* ¶¶ 18-19.)  According to Horton, Mr. Rivera only offered him a Molina health plan; did not offer any of the other health plans sold on the healthcare marketplace; and did not ask the necessary questions for purchasing insurance on the marketplace (such as household income).  (*Id.* ¶ 21.)  Horton further asserts that the

subsidy he was given was incorrect, and if he kept the insurance, he would have to repay the subsidy when he filed his taxes. (*Id.*) Therefore, posits Horton, Mr. Rivera "was obviously just trying to sell a Molina healthcare plan at all costs." (*Id.*) "After purchasing the policy, [Horton] received an email from Mr. Rivera with a copy of his receipt from Molina." (*Id.* ¶ 22.)

Horton then alleges that on September 11, 2025, he received a text message from telephone number 833-591-0256, stating that his healthcare policy was eligible for renewal and to call 888-452-1606. (*Id.* ¶ 14.) September 11, 2025, is a date after the date Horton filed his complaint, which Horton does not explain, even though Molina points out this discrepancy in its motion to dismiss. (*See generally* Resp.) According to Horton, he determined that all the texts were sent using an ATDS based on their "generic content;" the number of messages sent over a short period of time, including twice in one day; and the fact that "there was no relationship between the parties whatsoever," and the text messages are either "not monitored or are fake numbers." (Compl. ¶ 15.)

He further asserts that all the texts involved solicitations about open enrollment or some other offer about health insurance and because "[t]here was no identifying information in the texts as required by the TCPA, . . . he was forced to purchase whatever was being sold to identify who was behind the texts." (*Id.* ¶¶ 16-17.) Horton contends he texted 833-591-0256 (the number from which he alleges he received a text on September 11, 2025, a date that had not yet occurred) and received

an auto reply from someone who sells "homes on Liberty Point." (*Id.*) Horton further alleges that when he called the numbers 888-408-9110 and 888-452-1606, it was answered by Mr. Rivera and someone who sounded like they were in the same call center." (*Id.* ¶ 12.) The 9110 number appears to derive from the text message Horton alleges he received in November 2024 (*see id.* ¶ 13), while the 1606 number appears to derive from the text messages Horton alleges he received in September 2025—again, a date that had not occurred when Horton filed his complaint (*see id.* ¶ 14).

In sum, Horton alleges that all the texts at issue were sent in violation of the TCPA by Molina or someone on its behalf, and he seeks injunctive relief to cease all unsolicited call activity, statutory damages, costs, and pre- and post-judgment interest. (*See* Compl. ¶¶ 24-27.)

## II. LEGAL STANDARDS

### A.    Rule 12(b)(6)

In deciding a motion to dismiss for failure to state a claim on which relief may be granted under Rule 12(b)(6), the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007). Such a motion therefore is "not meant to resolve disputed facts or test the merits of a lawsuit" and "instead must show that, even in the plaintiff's best-case scenario, the complaint does not state a plausible case for relief." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020). A

plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level," *id*. at 555.  At this stage, the court does not evaluate the plaintiff's likelihood of success. *See Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 385 (5th Cir. 2017). Rather, it only determines whether the plaintiff has stated a claim upon which relief can be granted. *See id.*

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id*.  So, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id*. (quoting *Twombly*, 550 U.S. at 557 (cleaned up); *see also Bryant v. Ditech Fin., L.L.C.*, No. 23-10416, 2024 WL 890122, at *3 (5th Cir. Mar. 1, 2024) (unpublished) ("[J]ust as plaintiffs cannot state a claim using speculation, defendants cannot defeat plausible inferences using speculation.").

Federal Rule of Civil Procedure 8(a)(2) does not mandate detailed factual allegations, but it does require that a plaintiff allege more than labels and conclusions.  And, while a court must accept a plaintiff's factual allegations as true, it

is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  In fact, "the court does not 'presume true a number of categories of statements, including,'" in addition to legal conclusions, "'mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement.'"  *Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023) (quoting *Harmon v. City of Arlington, Tex.*, 16 F.4th 1159, 1162-63 (5th Cir. 2021)).  So, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, plaintiffs must "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (citing Fed. R. Civ. P. 8(a)(2)-(3), (d)(1), (e)).

In ruling on a Rule 12(b)(6) motion, the court limits its review to the face of the pleadings.  *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).  "Pleadings" for purposes of a Rule 12(b)(6) motion include attachments to the complaint.  *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205; *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000); *see also Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019) ("The Civil Rules provide that an attachment to a complaint generally becomes 'part of the pleading for all purposes,' including for ruling on a motion to dismiss." (quoting Fed. R. Civ. P. 10(c); citations omitted)). And "[w]hen 'an allegation is contradicted by the contents of an exhibit attached to

the pleading, then indeed the exhibit and not the allegation controls.'" *Rogers v. City of Yoakrum*, 660 F. App'x 279, 285 n.6 (5th Cir. 2016) (quoting *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004) (citing, in turn, *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940))).

Similarly, documents "attache[d] to a motion to dismiss are considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to [his] claim[s]." *Collins*, 224 F.3d at 498-99 (quotations omitted); *accord Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 725 (5th Cir.2003). Attachments falling under these categories may be properly considered without converting the motion to dismiss into a motion for summary judgment. *See Benchmark Electronics*, 343 F.3d at 725.

A plaintiff may not amend his allegations through a response to a motion to dismiss, Fed. R. Civ. P. 8(a), but leave to amend must be granted freely "when justice so requires," Fed. R. Civ. P. 15(a)(2). One reason to deny amendment is futility: "If the complaint, as amended, would be subject to dismissal, then amendment is futile and the district court [is] within its discretion to deny leave to amend." *Martinez v. Nueces Cnty., Tex.*, 71 F.4th 385, 391 (5th Cir. 2023) (quoting *Ariyan, Inc. v. Sewage & Water Bd. of New Orleans*, 29 F.4th 226, 229 (5th Cir. 2022)).

"Pro se complaints receive a 'liberal construction.' Even so, 'mere conclusory allegations on a critical issue are insufficient.'" *Brown v. Tarrant Cnty., Tex.*, 985 F.3d 489, 494 (5th Cir. 2021) (quoting *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018);

-9-

*United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989)).  And "liberal construction does not require that the Court . . . create causes of action where there are none."  *Smith v. CVS Caremark Corp.*, No. 3:12-CV-2465-B, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013).

**B.    TCPA**

The TCPA makes it unlawful to use an ATDS or a prerecorded or artificial voice to message a cellular phone without the called party's prior express consent. 47 U.S.C. § 227(b)(1)(A).  As the Supreme Court explained in *Facebook, Inc. v. Duguid*, an ATDS "must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator."  592 U.S. 395, 399 (2021).  A private right of action in both federal and Texas state court is afforded to individuals or entities who have received calls in violation of 47 U.S.C. § 227(b).  47 U.S.C. § 227(b)(3); Tex. Bus. & Com. Code § 305.053(a); *see also Shields v. Gawk Inc.*, No. 3:18-CV-150, 2019 WL 1787781, at *1 (S.D. Tex. Apr. 24, 2019).

Courts recognize the difficulty a plaintiff faces in establishing that an ATDS was used prior to discovery, thus, various inferences are afforded in a plaintiff's favor.  *Hunsinger v. Alpha Cash Buyers, LLC*, No. 3:21-CV-1598-D, 2022 WL 562761, at *3 (N.D. Tex. Feb. 24, 2022).  Plaintiffs can "rely on indirect allegations" to support claims that an ATDS was used, such as identical messages being sent to multiple parties at once, use of an SMS short code in sending the message, and

"dead-air time" during a call. *Id.* at *4. But mere allegations of ATDS usage, without more, are insufficient to sustain a claim under the TCPA. *Id*. at *3.

Further, any entity or individual initiating pre-recorded or artificial voice calls for telemarketing purposes "must have a written policy, available upon demand, for maintaining a do-not-call list." 47 C.F.R. § 64.1200(d)(1). The entity or individual must also provide the called person with the name of the individual caller and the name of the individual or entity on whose behalf the call is being made, as well as contact information. 47 C.F.R. § 64.1200(d)(4). District courts in the Fifth Circuit have extended the private right of action under 47 U.S.C. § 227(c) to violations of 47 C.F.R. § 64.1200(d). *Powers v. One Technologies, LLC*, No. 3:21-CV-2091, 2022 WL 2992881, at *2 (N.D. Tex. July 28, 2022).

Moreover, the TCPA "regulates calling practices to protect rights of privacy of those registered on the DNC list." *Horton v. MultiPlan, Inc.*, No. 3:23-CV-02098-S-BT, 2024 WL 3380236, at *5 (N.D. Tex. June 7, 2024). The Act grants the Federal Communications Commission ("FCC") the power to implement regulations enforcing these protections. *Id.* at *1. One of these regulations "prohibits telemarketers from calling residential phones numbers listed on the National Do-Not-Call Registry to solicit business." *Pinn v. Quintessa, LLC*, No. 3:24-CV-3090-B, 2025 WL 2201050, at *2 (N.D. Tex. Aug. 1, 2025) (citing 47 C.F.R. § 64.1200(c)(2)). A defendant can be liable directly or vicariously if acting through a third party with which the defendant has an agency relationship. *Id.* For a private right of action

-11-

under this regulation, the individual or entity must have received more than one telephone call in violation within a 12-month period by or on behalf of an entity.  *Id.*

To determine whether the principal is liable for the agency action, courts have used "traditional notions of vicarious liability."  *Powers*, 2022 WL 2992881, at *2. To prove an agency relationship exists, the principal must have the right to assign the task to the agent and control the means by which the task is carried out.  *Cunningham v. Daybreak Solar Power, LLC*, No. 4-22-CV-00599-O, 2023 WL 3985245, at *3 (N.D. Tex. June 13, 2023).

Liability under the TCPA is exempted when the caller has an "established business relationship" with the called party.  *Starling v. J Wales Home Solutions LLC*, No 4:21-CV-01261-O, 2022 WL 1156021, at *4 (N.D. Tex. Apr. 19, 2022) (citing  47 U.S.C. § 227(a)(4)).  "An 'established business relationship' is defined as 'a prior existing relationship formed by a voluntary two-way communication . . . on the basis of the subscriber's purchase or transaction with the entity within the eighteen . . . months immediately preceding the date of the telephone call.'"  *Id.* (quoting 47 C.F.R. § 64.1200(f)).  It can also be formed when the subscriber inquires into or applies for products or services the entity offers within the three months before the call.  *Id.* (citing 47 C.F.R. § 64.1200(f)).  An established business relationship can be terminated with a "do not call" request. *Id.* (citing 47 C.F.R. § 64.1200(f)(5)(i)).

Section 305.053 of the Texas Business and Commerce Code also establishes a cause of action under state law that allows a person to file suit in state court against a party that violates the TCPA. *See* Tex. Bus. & Com. Code § 305.053(a). The Texas statute is coextensive with the TCPA. *Shields*, 2019 WL 1787781, at *5.

## III.  ANALYSIS

**A.   Horton does not plausibly allege that Molina or its proxy sent the alleged messages.**

In his first cause of action, Horton alleges that, "[u]sing an ATDS, the Defendants, texted the Plaintiff without the Plaintiff's consent, knowledge, and for its benefit without having any consent to do so from the Plaintiff." (Compl. at ECF p. 7.) Horton alleges that he received a single text message from 866-884-3286 on November 21, 2024, with a message saying that open enrollment had begun and to call 888-408-9110, and that he later received two messages from 888-919-1795, about two months later, on January 7 and 15, 2025, both purportedly stating that "[Horton's] 2025 healthcare plan may require attention and to call 888-201-0773." (Compl. ¶¶ 12-13.) Horton does not allege that any of these numbers belong to Molina. (*See id.*)

Horton next alleges that he received a single text message on September 11, 2025 (after the date he filed his complaint) from 833-591-0256 "saying that your healthcare policy was eligible for renewal and to call 888-452-1606." (*Id.* ¶ 14.) Here again, Horton does not allege that either number belongs to Molina. (*See id.*)

Instead, Horton avers that 833-591-0256 belongs to an individual who sells "homes on Liberty Point." (*Id.* ¶ 15.)

Then, Horton alleges that on April 1, 2025, he called 888-201-0773 (from the January 2025 text messages) and bought a Molina policy from "Julien Rivera" at "julien@coverageassociate.com." (*Id.* ¶¶ 18-19.) He also alleges he called 888-408-9110 (from the November 2024 text message) and 888-452-1606 (from the alleged September 2025 "future" message), which were answered "by Mr. Rivera and someone who sounded like they were in the same call center." (*Id.* ¶ 20.) Finally, Horton alleges that Mr. Rivera was "obviously" only selling a Molina plan because he did not offer any of the other plans sold on the marketplace. (*Id.* ¶ 20.)

But these bare allegations do not sufficiently allege that Molina or an entity acting on its behalf sent the alleged improper messages, as required to allege a violation of TCPA section 227(b)(1). Indeed, the allegations demonstrate that two entirely separate companies from Molina—one purportedly selling "Homes on Liberty Point" and the other employing an individual from "coverage associate." (*See* Compl. ¶¶ 15, 19.) No allegations connect those companies or individuals to Molina—aside from the bare assertion that Horton later purchased a Molina policy. (*See* Compl. ¶¶ 12-22.) But the mere fact that Horton subsequently acquired a Molina healthcare plan (from an entity other than Molina) is insufficient to support an allegation that the sender of the text message was acting as Molina's agent or that Molina should be held vicariously liable for the sender's conduct.

In response, Horton argues that his claim against Molina is supported by factual allegations that Molina hired a company to market its policies; this company sent numerous texts to Horton in violation of the TCPA; and that Horton ultimately bought a Molina healthcare policy as a result of these texts. (*See* Resp. at ECF p. 5.) But these general, conclusory allegations are not supported by any factual content, and therefore, there is no basis to accept them as true. For these reasons, the undersigned concludes that Horton failed to allege sufficient facts illustrating that Molina or its proxy sent Horton the text messages. *See Horton v. Advantage One Brokers Corp.*, No. 3:22-CV-02474-B-BT, 2023 WL 4188291, at *4 (N.D. Tex. June 5, 2023), *adopted*, 2023 WL 4188046 (N.D. Tex. June 26, 2023) (finding that plaintiff's allegations that the offending calls "were made by, on behalf of, for the benefit of, with the knowledge and approval of the Defendant" does not provide a "factual basis" for finding defendant directly or vicariously liable for violating the TCPA).

Additionally, because Horton fails to plausibly allege that Molina or its proxy sent the offending text messages, his claim that Molina failed to identify itself as required under 47 C.F.R. § 64.1200(d)(4) likewise fails. (*See* Compl. at ECF p. 8-9.) In his fifth cause of action, Horton claims that "Defendants did not fulfill [the requirement to identify the sender], which is why the Plaintiff had to click the link and call to buy a policy." (*See id.* at ECF p. 9.) As an initial matter, Horton's statement that he had to both click a link *and* call to buy the policy is both implausible on its face and contradictory. (*See* Compl. ¶¶ 12-14 (prior statements

-15-

asserting that the text messages advised him to call about open enrollment or to renew his healthcare policy, not to click a link; ¶ 18 (prior statement that on April 1, 2025, Horton "*called* 888-201-0773 and bought a Molina policy") (emphasis added).) And although Horton admits that "[t]he bit in the complaint about having to 'click a link' to buy the policy is a typo and remnant of an older complaint (*see* Resp. at ECF p, 12), Horton's failure to plausibly allege that *Molina* sent text messages without identifying itself is fatal to his fifth cause of action.

**B.      Horton does not plausibly allege that Molina used an ATDS in violation of TCPA section 227(b)(1)(A).**

Horton fails to plausibly allege the use of an ATDS.  As previously noted, courts have permitted plaintiffs to infer the use of an ATDS through "indirect allegations" such as "generic messages, identical messages sent to multiple parties at the same time, [ ] the use of an SMS short code to send the message," and "'dead-air time' during the call."  *See Hunsinger*, 2022 WL 562761, at *4 (citing S*chley v. One Planet Ops Inc.*, 445 F. Supp. 3d 454, 459-60 (N.D. Cal. 2020); *Cunningham v. Nationwide Sec. Solutions, Inc.*, No. 3:17-CV-00337-M, 2017 WL 10486988, at *3 (N.D. Tex. Nov. 2, 2017)).  But bare allegations of ATDS usage, without more, are insufficient to sustain a claim under the TCPA.  *Id*. at *3. Such is the case here—Plaintiff's allegations fail to plausibly plead the use of an ATDS.

Horton asserts the following inferential facts to support his allegation that Molina used an ATDS:

- The generic content of the messages – the almost identical texts do not address the Plaintiff by name so it can be sent to thousands of people at once without having to customize each message.

- That there was no relationship between the parties.

- That incoming text messages are not monitored or are fake numbers. Plaintiff texted 833-591-0256 and received an auto reply from someone who sells "homes on Liberty Point."

- The number of texts sent over such a short time period, once even twice in 1 day.

(Compl. ¶ 15.)

These allegations do not establish the pleading requirement that a random or sequential number generator was used, as the Supreme Court mandated in *Facebook, Inc. See* 592 U.S. at 399. First, there is no allegation regarding use of a short code, a common complaint for TCPA plaintiffs alleging the use of a machine having the capacity to randomly or sequentially generate numbers to dial. *See Hunsinger*, 2022 WL 562761, at *5 ("The use of a short [as opposed to a long code] suggests the use of an ATDS. Although the use of a long code does not preclude the use of an ATDS, it does not support an inference that an ATDS was used either.") (internal quotations omitted).) Horton appears to argue that *any* phone number or messaging device (long codes, RCS, or MMS platforms) could be used by an ATDS, and thus his allegations should be taken as sufficient. (*See* Resp. at ECF at 6-7). But if that were sufficient, there would be no meaningful distinction between a plausible ATDS allegation and mere speculation. "Simply alleging the use of an ATDS, without

-17-

more is insufficient to sustain a TCPA claim." *Cunningham*, 2017 WL 10486988, at *2; *see also Hunsinger*, 2022 WL 562761, at *5.

Second, while Horton complains of the "generic" content of the messages, he provides a screenshot of only one of the purported messages (*see* Dkt. No. 9-1) which, by itself, does not support Horton's claim regarding the "almost identical" nature of the messages. *See Horton v. National Republican Senatorial Comm.*, No. 3:22-CV-1000-G-BK, 2023 WL 372066, at *5 (N.D. Tex. Jan. 23, 2023) (dismissing Horton's TCPA complaint in part because he "did not provide a thorough description of what the messages contained nor a copy of the messages in his first amended complaint"). Just the opposite here, Horton highlights significant differences between the messages and the context in which they were sent. The first (singular) message on November 21, 2024 merely stated, "that open enrollment has begun." The second messages from January 2025 "claimed that the Plaintiff's 2025 healthcare plan may require attention." Those are very different messages, with the January messages suggesting an existing healthcare plan needing attention. Finally, the alleged not-yet-occurring message from September 2025 states his healthcare policy was/is eligible for renewal—again suggesting an existing policy, but also different from the prior messages. Thus, there is nothing "identical" about these messages. *See Hunsinger*, 2022 WL 562761, at *5 (stating that "the context in which they were sent, and the fact that the text messages were sent from an SMS long code all fail to support a reasonable inference that Alpha Cash used an ATDS to send the text messages").

Third, while Horton alleges "[t]hat there was no relationship between the parties"—presumably referring to "Defendants" globally—two of the three messages reasonably suggest an existing healthcare plan, and thus an existing relationship between Horton and the messenger. *See Hunsinger*, 2022 WL 562761, at *5 (rejecting plaintiff's contention that an ATDS was used where "the contents of the text messages suggest that they were sent with the purposes of following up on the prior telephonic interactions and discussing a potential transaction between Alpha Cash and Hunsinger"). Horton admits in his response that he had a Molina insurance policy that ended in 2018. (*See* Resp. at ECF p. 8.) He argues, however, that this is "far too long ago for a 'preexisting business relationship' claim to hold water." (*Id.*) While it is true that a business relationship with Molina in 2018 is not within 18 months of the alleged messages in the present complaint, *see Starling*, 2022 WL 1156021, at *4 (citing 47 U.S.C. § 227(a)(4)), this new admission directly contradicts Horton's allegation that "[p]rior to receiving the above-referenced texts, [he] had no relationship with Defendants." (Compl. ¶ 23.) Therefore, the Court is not obligated to accept these inconsistencies as true. *See Carson Optical Inc. v. eBay Inc.*, 202 F. Supp. 3d 247, 255 (E.D.N.Y. 2016) ("Where [a] plaintiff's own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss."); *see also Mora v. Univ. of Texas Sw. Medical Ctr.*, 469 F. App'x 295, 299 (5th Cir. 2012)

-19-

(plaintiff's allegations were "contradicted by the other facts alleged in the complaint, making the claim implausible on its face").

Fourth, Horton asserts that he received an "auto reply" from one of the numbers belonging to "someone who sells, 'homes on Liberty Point,'" which is evidence of an ATDS. (Compl. ¶ 15.) Horton does not describe what he means by "auto reply" or why a number belonging to someone who sells "homes on Liberty Point" demonstrates proof that "Defendants" used an ATDS to try to sell him a Molina insurance plan. Furthermore, the fact that Horton received a response undermines his contention that the number was somehow "not monitored" or "fake." Horton does not explain how receipt of a responsive message demonstrates a fake number.

Fifth, Horton infers the use of an ATDS based on "[t]he number of texts sent over such a short time period, once even twice in 1 day." (Compl. ¶ 15.) As an initial matter, Horton's complaint does not allege that he received multiple messages on the same day. The closest he comes is reference to being messaged "twice" on January 7 and January 15, 2025—which could be construed as twice each on January 7 and January 15 or one message on each day. (Compl. ¶¶ 12-13.) Further, considering the distinct purpose of each message—the first in November 2024 notifying him of open enrollment, the January 2025 messages asking for his attention to his existing healthcare plan, and a third message in September 2025 (after he filed

his lawsuit) requesting renewal—the messages are neither identical nor so frequent or closely spaced as to suggest use of an ATDS.

Finally, Horton does not identify or even attempt to allege that multiple parties received identical messages at the same time. *See Hunsinger*, 2022 WL 562761, at *4 (citing *Schley*, 445 F. Supp. 3d at 459-60; *Cunningham*, 2017 WL 10486988, at *3). Here, Horton alleges three messages, at least two of which concerned his current health plan, and nothing in his allegations suggest *en masse* messaging using a random or sequential number generator.

Horton cites *Callier v. Multiplan, Inc.* to argue that he need not offer any allegations supporting the use of an ATDS at the pleading stage. (*See* Resp. at ECF p. 9 (citing *Callier v. Multiplan, Inc.*, No. EP-20-CV-00318-FM, 2021 WL 8053527, at *18 (W.D. Tex. Aug. 26, 2021) ("The court does not read *Facebook* to require TCPA plaintiffs to plead "dead-airtime."")).) But *Callier* is easily distinguishable. In *Callier*, the plaintiff alleged that he had received several calls from a spoofed number, that he had received nine calls during a 14-month period, and that there were prerecorded messages sent *en masse*. *See id.* at *2. And although, Horton asserts that because his Molina healthcare policy ended in 2018, this is "more evidence of mass texts sent out to random numbers using ATDS" (Resp. at ECF p. 8), this assertion is mere speculation and does not plausibly allege that Molina sent the text messages or infer the use of an ATDS. Accordingly, even construing the allegations in the light most

-21-

favorable to Horton, the allegations do not plausibly suggest that an ATDS was used. *See Facebook, Inc.*, 592 U.S. at 399.

**C.    Horton does not allege two or more "telephone solicitations" as required to state a claim for violation of Section 227(c)(3)(F) of the TCPA.**

In his second cause of action, Plaintiff alleges that his number "has been on the National Do Not Call List since 2011 because he does not want to be called or texted by entities who do not have his permission," and that, "[a]s a result of the texts sent by the Defendants, the Plaintiff is entitled to recover $500 in a civil fine for each offense under 227(c)(3)(5)(B)."[3]  (Compl. at ECF p. 7.)

47 U.S.C. § 227(c)(3)(F) provides for the establishment of regulations "prohibit[ing] any person from making or transmitting a telephone solicitation to the telephone number of any subscriber included in such database."  47 U.S.C. § 227(c)(3)(F).  The corresponding regulations define "telephone solicitation" to mean "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services . . . but does not include a call or message (i) [t]o any person with that person's prior express invitation or permission [or] (ii) [t]o any person with whom the caller has an established business relationship."  *See* 47 C.F.R. § 64.1200(f)(15).  This definition

---

[3] The undersigned believes Horton means to refer to "227(c)(5)(B)," the section of the statute that provides a private right of action to any person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection, if otherwise permitted by law.  47 U.S.C. § 227(c)(5)(B).  Section 227(c)(5)(B) does not itself provide for a substantive cause of action; rather, it requires an alleged violation of the "regulations prescribed under this subsection."

matches the definition of "telephone solicitation" found in 47 U.S.C. § 227(a)(4).

Accordingly, the undersigned construes Horton's second cause of action as alleging

that Molina sent at least two "telephone solicitations" to his number while it was

registered on the National Do Not Call List.  Horton's allegations, however, fail to

plausibly allege such a claim.

While Horton contends that he received three messages in a 12-month period

(with the fourth message allegedly received at a date that had not yet occurred), all

but one message refers to an existing healthcare plan—undermining any inference

that the message came from a party with whom Horton lacked a prior relationship.

Further, the January 2025 messages merely state that his healthcare plan needed

attention, and therefore, they do not constitute a message sent "for the purpose of

encouraging the purchase or rental of, or investment in, property, goods, or

services."  *See* 47 C.F.R. § 64.1200(f)(15).  There is no allegation that these calls

requested Horton to purchase anything at all.  *See National Republican Senatorial

Comm.*, 2023 WL 372066, at *5 (stating Horton "did not state that the NRSC

promoted the sale of its products"); *see also An Phan v. Agoda Co. Pte. Ltd.*, 351 F.

Supp. 3d 1257, 1265 (N.D. Cal. 2018) (dismissing plaintiff's TCPA claims and

finding that the messages did not qualify as advertising or telemarketing because they

were sent as part of an ongoing business transaction); *Aderhold v. Car2go N.A., LLC*,

No. C13-489RAJ, 2014 WL 794802, at *6-9 (W.D. Wash. Feb. 27, 2014) (granting

defendant's motion for judgment on the pleadings because the text messages were

sent to complete the plaintiff's registration process).  The alleged September 2025 message similarly refers to a renewal of his existing healthcare plan—again suggesting a prior relationship.  (*See* Compl. ¶ 14.)

Accordingly, even reading the complaint in the light most favorable to Horton, he alleges at most only one message received in a 12-month period that could even possibly be contended to constitute a "telephone solicitation" as defined—the November 2024 message stating that "open enrollment has begun." (*See id.* ¶¶ 13-14.)  But given the separate messages all inferring an existing relationship, even this allegation does not plausibly plead a "telephone solicitation" as required to state a claim under the TCPA's implementing regulations.

Because Horton has not plausibly alleged that he received more than one telephone solicitation, he fails to state a claim, and his second cause of action should be dismissed for this additional reason.

**D.    Horton does not plausibly allege that Molina violated 47 C.F.R. § 64.1200(d)(1).**

In his third cause of action titled, "Violation of § 64.1200(d)(1), Failure to Maintain Written Telemarketing Policy," Horton, alleges that "[he] requested an Internal DNC Policy directly from Molina via their website. It was never supplied." (*See* Compl. ECF p. 7-8).  Section 64.1200(d) is one of the implementing regulations of the TCPA and provides in relevant part:

> (d) No person or entity shall initiate . . . any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of

persons who request not to receive such calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making . . . calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

> (2) Training of personnel engaged in telemarketing. Personnel . . . engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

> . . .

> (6) Maintenance of do-not-call lists. A person or entity making . . . any call for telemarketing purposes must maintain a record of a consumer's request not to receive further calls. A do-not-call request must be honored for 5 years from the time the request is made.

§ 64.1200(d). Horton seeks statutory damages of $500 in damages for each violation as allowed by the TCPA, 47 U.S.C. § 227(c)(5)(B). (*See id.*)

Section 64.1200(d)(4) is part of the TCPA's requirement to maintain an internal do-not-call list. "The regulation relates to a marketer's duty to prepare internal policies to receive and implement affirmative requests not to receive calls," so, where a plaintiff fails to "allege that he made any such affirmative request," he generally fails to allege "how the provision was violated." *Bailey v. Domino's Pizza, LLC*, 867 F. Supp. 2d 835, 842 (E.D. La. 2012) (granting motion to dismiss where a complaint "simply recite[d] the requirements of 47 C.F.R. § 64.1200(d) and conclusorily allege[d] that they were violated"); *cf. John v. Keller Williams Realty, Inc.*, No. 6:19-cv-1347-Orl-40DCI, 2020 WL 10502631, at *5 (M.D. Fla. Feb. 4, 2020) ("The regulations in § 61.1200(d) are not directly concerned with the *national* do-not-

call list, but the requirement that companies maintain *internal* do-not-call lists." (emphasis in original)).

Molina represents that its website provides its "SMS Terms and Conditions" for Texas, the text of which it sets out in its motion.  (*See* Mot. at 11-12 (citing https://www.molinahealthcare.com/members/common/en-US/text-terms-conditions.aspx).)  Horton maintains that even if he could have found the terms and conditions on Molina's website, under the TCPA, "a telemarketer must provide, on demand, its internal and standalone Do Not Call Policy," which Molina failed to do. (*See* Resp. at ECF p. 11.)  Horton also attaches a screenshot purporting to show that he accessed his Molina account page to type in a message regarding "Other Health Benefits" with a request to "Please provide me a copy of your internal DNC policy." (*See* Dkt. No. 9-4.)  Horton contends that Molina "should have responded, directing [him] to the terms and conditions page or sending me some document[,] but "they ignored the request."   (*See* Resp. at ECF p. 11.)

Molina also argues for the first time in its reply brief that "there is no standing for a failure-to-produce-policy claim unless the plaintiff shows that he requested to be added to the company's internal do-not-call list but still received messages afterwards."[4] (Reply at 5.)  There is no need to consider Molina's standing argument,

---

[4] The Court generally does not consider new arguments raised in a reply.  *Baker v. Aetna Life Ins. Co.*, 228 F. Supp. 3d 764, 770 n.7 (N.D. Tex. 2017) ("[T]he court will not consider an argument raised for the first time in a reply brief." (internal quotation marks omitted)); *see also Robles v. Eminent Med. Ctr., LLC*, 619 F. Supp. 3d 609, 626 (N.D. Tex. 2022) ("Arguments raised for the first time in a reply brief are generally waived, as the

however, because the question of whether Horton plausibly alleged that Molina sent the offending text messages goes to the merits of his claim. Here, Horton alleges that he has been on the National Do Not Call List since 2011, but the complaint lacks any allegation that Horton requested to be placed on an internal do-not-call list maintained by a Molina or that could otherwise show that Molina failed to institute required procedures for maintaining a do-not-call list as required by Section 64.1200(d)(4). (*See generally* Compl.) Nor does Horton allege that he asked to be put on an internal do-not-call list and Molina failed to honor his request. Horton only alleges that he requested a copy of Molina's DNC policy, and it was not provided, which is insufficient to state a claim under 47 C.F.R. § 64.1200(d).

**E.     Because Horton failed to sufficiently allege that Molina violated the TCPA, his state law cause of action also fails.**

Although Horton asserts that "Defendants" are liable under Texas state law because they violated the TCPA (see Compl. at ECF p. 8), as explained above, the undersigned concludes that Horton has failed to plausibly plead a TCPA claim. Therefore, his state law under Section 305.053 of the Texas Business and Commerce Code claim likewise fails. *See National Republican Senatorial Comm.*, 2023 WL 372066, at *6 ("Because Horton failed to provide sufficient facts to plead a TCPA section 227(b)(1)(A) violation, he necessarily fails to plead a TBCC section

responding party is deprived of the opportunity to respond to the new argument." (internal quotation marks omitted)).

305.053(a) violation. The court, therefore, grants the NRSC's motion to dismiss Horton's TBCC section 305.053(a) claim.").

**F.      Horton is not entitled to a hearing to address his request that Molina be compelled to reimburse the premium he paid for a healthcare policy.**

On December 10, 2025, Horton filed a motion for hearing requesting that the Court hold a hearing to compel Molina to issue Horton a refund for the premium he paid to purchase an insurance policy from Molina. (*See* Dkt. No. 11.) As an initial matter, there is no claim in this case relating to the premium or upon which the Court could issue any ruling ordering Molina to reimburse Horton for the amount he spent for health insurance or to reverse his prior purchase. (*See generally* Compl.)

A Court has jurisdiction to consider injunctive relief only to the extent it relates to a claim in the case. *See Williams v. Recovery School District*, 859 F. Supp. 2d 824, 833 (E.D. La. 2012) (stating "the availability and scope of injunctive relief is dictated by the nature of the violation"). "[A]n injunction cannot encompass more conduct than was requested or exceed the legal basis of the lawsuit." *Carter v. Local 556, Transport Workers Union of America*, 156 F.4th 459, 500 (5th Cir. 2025); *see also Scott v. Schedler*, 826 F.3d 207, 211 (5th Cir. 2016) (concluding an injunction "is overbroad if it is not narrowly tailored to remedy the specific action which gives rise to the order as determined by the substantive law at issue").

Here, the only claims alleged are violations of the TCPA and the parallel Texas state law, seeking money damages as a result of alleged violative text messages. (*See* Compl. at ECF p. 7-9). There is no cause of action relating to an

improperly collected health care premium.  Nor is there any claim regarding the propriety (or impropriety) of Horton's premium payment for the purchase of a "Healthcare.org insurance policy." (*See* Dkt, No. 11.)  Accordingly, Horton's motion for hearing (Dkt. No. 11) is improper and should be denied.

## IV.  LEAVE TO AMEND

The ability to file objections to this recommendation (as further explained below) allows Horton an opportunity to cure the deficiencies identified above—that is, through timely objections, to provide enough facts to plausibly allege a claim asserted—and thus show the Court that this case should not be dismissed with prejudice at this time and that the Court should instead grant leave to amend.  *See Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021) ("A court should freely give leave to amend when justice so requires, but a movant must give the court at least some notice of what his or her amendments would be and how those amendments would cure the initial complaint's defects.  If the plaintiff does not provide a copy of the amended complaint nor explain how the defects could be cured, a district court may deny leave." (citations omitted)).

If Horton fails to show through timely objections that leave to amend should be granted, the Court should dismiss this case with prejudice.

## V.  RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Molina's motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim (Dkt. No. 5) be **GRANTED**, and Horton's motion for a hearing (Dkt. No. 11) be **DENIED**.

**SO RECOMMENDED** on February 6, 2026.

BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE

## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

-30-